UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MELVIN LEON CORNELL,

               Petitioner,                      Case No. 1:13-cv-1077

v.                                       Honorable Robert J. Jonker

WILLIE SMITH,

               Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Melvin Leon Cornell is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan.  On July 22, 2011, an Oakland County Circuit Court jury found Petitioner guilty of unarmed robbery, Mich. Comp. Laws § 750.530.  On August 16, 2011, the court imposed sentences of 9 to 40 years.

On September 26, 2013,[1] Petitioner filed his habeas corpus petition raising eleven grounds for relief, as follows:

    I.      DUE TO [THE] LACK OF THE ELEMENT OF IDENTIFICATION THE VERDICT OF GUILTY CONSTITUTED A DENIAL OF DUE PROCESS.

    II.     PETITIONER'S FOURTEENTH AMENDMENT DUE PROCESS RIGHT WAS VIOLATED WHEN STATE COURT DISTRICT JUDGE ISSUED A WARRANT BASED ON A DEFECTIVE COMPLAINT THAT DID NOT SHOW PROBABLE CAUSE TO ARREST PETITIONER[,] A CLEAR VIOLATION OF

---

[1] Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court.  *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).  For purposes of this Report and Recommendation, I have given Petitioner the benefit of the earliest possible filing date.  *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

PETITIONER'S FOURTH AND FOURTEENTH AMENDMENT [RIGHTS] UNDER THE U.S. CONST.

III.   PETITIONER'S SIXTH AMENDMENT [RIGHT] WAS VIOLATED UNDER MCL 747.40A WHEN THE PROSECUTING ATTORNEY DID NOT ATTACH TO THE FILED INFORMATION A LIST OF ALL WITNESSES KNOWN TO THE PROSECUTING ATTORNEY OR INVESTIGATING LAW ENFORCEMENT OFFICERS.

IV.   PETITIONER'S FOURTEENTH AMENDMENT [RIGHT] WAS VIOLATED WHEN [THE] STATE COURT RULED THAT AN INDEPENDENT BASI[S] EXISTED FOR [THE] PROSECUTION'S WITNESS, JAMES BINNS['], IN COURT IDENTIFICATION AT THE PRELIMINARY EXAMINATION.

V.   PETITIONER CLAIMS THE LABELLED [sic] PHOTOGRAPHIC LINEUP PROCEDURE WAS HIGHLY SUGGESTIVE AND IMPERMISSIBLE, VIOLATION OF THE FOURTEE[N]TH AMENDMENT, DUE PROCESS AND EQUAL PROTECTION UNDER THE UNITED STAT[E]S CONSTITUTION.

VI.   PETITIONER CLAIMS THAT THE FOURTH AND THE FOURTEE[N]TH AMENDMENT UNDER THE U.S[.] CONST WAS VIOLATED WHEN [THE] STATE COURT DENIED HIS MOTION TO QUASH INFORMATION/COMPLAINT; MOTION TO DISMISS AND SUPPRESS IDENTIFICATIO[N].

VII.   PETITIONER CLAIMS HIS SIX[TH] AMENDMENT CONST RIGHT WAS VIOLATED WHEN HIS COUNSEL WAS NOT PRESENT DURING PHOTOGRAPHIC LINEUP WHEN PETITIONER WAS CLEARLY THE PRIMARY FOCUS OF INVESTIGATION.

VIII.   PETITIONER CLAIMS THAT HE WAS DENIED DUE PROCESS AND EQUAL PROTECTION UNDER THE U.S[.] CONST FOURTEE[N]TH AMENDMENT WHEN THE STATE COURT PROCEEDED WITH HIS TRIAL ABSEN[T] A DIAGNOSTIC JUDICIAL COMPETENCY HEARING AND PSYCHIATRIC EVALUATION THAT WAS ORDERED BY TRIAL COURT.

IX.   PETITIONER CLAIMS THAT THE EIGHT[H] AMENDMENT, UNDER THE UNITED [STATES] CONSTITUTION WAS VIOLATED WHEN THE TRIAL COURT IMPOSED A SENTENCE VIOLATING THE PRINCIPLE OF PROPORTIONALITY.

X.   PETITIONER CLAIMS THAT DUE PROCESS AND EQUAL PROTECTION UNDER THE FOURTEE[N]TH AMENDMENT WAS VIOLATED WHEN THE STATE COURT REPORTER OR RECORDER DELAYED THE TRANSCRIBING OF HIS PRETRIAL AND TRIAL TRANSCRIPTS.

XI.   PETITIONER CLAIMS THAT HIS SIX[TH] AMENDMENT RIGHT TO EFFECTIVE ASSISTAN[CE] OF COUNSEL WAS VIOLATED UNDER THE

UNITED STATES CONSTITUTION, DUE TO THE CUMULATION OF ERRORS BY THE DEFENSE COUNSEL, AND DUE TO THE FACT THAT APPELLA[TE] COUNSEL DID NOT RAISE ANY OF THESE AR[]GUABLE CLAIMS THAT PETITIONER HAS RAISED ON APPEAL.

(Pet., ECF No. 1, PageID.5, 9, 11, 14, 15-21.)  Respondent has filed an answer to the petition (ECF No. 15) stating that the grounds should be denied because Ground I is unexhausted, Grounds II, IV, VIII, IX, and X are procedurally defaulted, and the remaining grounds are either noncognizable or without merit.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that Petitioner's habeas grounds are either noncognizable or meritless.[1]  Accordingly, I recommend that the petition be denied.

## Discussion

### I.    Factual allegations

On January 18, 2011, as Lindore Hebert was checking out at the Kroger store in Southfield, Michigan, a black man later identified as Petitioner hit Lindore in the back of the neck and pushed him to the ground.  Petitioner stole Lindore's wallet from his right rear pocket and ran out of the store.  Petitioner was charged with one count of unarmed robbery, and, following a preliminary examination held on February 7, 2011, he was bound over on that charge.  (Prelim. Exam. Tr., ECF No. 16-2, PageID.216.)  On February 11, 2011, the prosecutor filed a notice of

---

[1] Reasonable arguments exist for concluding that, as Respondent argues, Petitioner procedurally defaulted Grounds II, IV, VIII, IX, and X.  However, the U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.  *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted).  *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  Where, as here, the procedural default issues in Grounds II, IV, VIII, IX, and X raise more questions than those claims on the merits, I will assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for the default of those claims.  *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

intent to seek a sentence enhancement on the charge that Petitioner was a fourth-offense felony offender, Mich. Comp. Laws § 769.12.  (*Id.*)

Petitioner initially was represented by a court-appointed attorney.  On May 23, 2011, a retained attorney for Petitioner filed an appearance in the case, and an order substituting counsel was entered on May 25, 2011.  (Oakland Cty. Case Summary, ECF No. 16-1, PageID.182.) Multiple attempts to reach a plea agreement were undertaken, both by original counsel and substitute counsel.  (*See* 2/15/11 Pretrial Hr'g Tr., ECF No. 16-3, PageID.220-221 (court refused to approve a *Cobbs*[2] agreement with a minimum of 36 months); 3/1/11 Pretrial Hr'g Tr., ECF No. 16-4, PageID.226 (same); 3/8/11 Pretrial Hr'g Tr., ECF No. 16-5, PageID.234 (victim insisted on a minimum sentence of at least 48 months, which Petitioner would not accept); 5/31/11 Pretrial Hr'g Tr., ECF No. 6-7, PageID.245-247 (court approved *Cobbs* agreement for minimum sentence of 36 months, but Petitioner refused); T. Tr. I,[3] ECF No. 16-9, PageID.268 (*Cobbs* agreement for 36 months offered again, rejected by Petitioner, and finally withdrawn).)  In addition, trial counsel filed a variety of pretrial motions:  (1) a motion to quash for lack of evidence of force and violence and because of an improper warrantless arrest; (2) a motion to dismiss based on multiple due process and Sixth Amendment violations, including the allegedly improper form and substance of the information, the failure to list the identifying witness on the complaint prior to the preliminary examination, and the failure to produce all witnesses at the preliminary examination; and (3) a motion to suppress the in-court identification as impermissibly suggestive. (Oakland Cty. Case

---

[2] In *People v. Cobbs*, 505 N.W.2d 208 (Mich. 1993), the Michigan Supreme Court approved a process under which a judge conducts a preliminary evaluation of the case and makes a tentative offer of the sentence prior to a defendant's entry of a plea.  The *Cobbs* court held that such an agreement is lawful, as long as the defendant is given the right to withdraw the plea if and when the judge on full review decided not to honor the earlier agreement).

[3] Petitioner was tried before a jury on July 21, 2011, and July 22, 2011.  The Court will refer to the transcripts as follows:
Transcript of proceedings on July 21, 2011:        (T. Tr. I, ECF No. 16-9, PageID.___);
Transcript of proceedings on July 22, 2011:        (T. Tr. II, ECF No. 16-10, PageID.___).

Summary, ECF No. 16-1, PageID.183.)  At a hearing held on July 13, 2011, the court denied all

of the defense motions.  (7/13/11 Pretrial Hr'g Tr., ECf No. 16-8, PageID.260-262.)

Southfield Police Detective David Clevenger testified that the investigation initially

focused on Petitioner, because he had left his Bridge Card with his name on it at the Kroger.

Although internal store surveillance videos were reviewed, they did not provide any usable

information or images of Petitioner. The video from outside the store showed the suspect fleeing

and the victim chasing him, but it was not possible to identify the suspect from the video.  (T. Tr.

I, ECF No. 16-9, PageID.299.)  Based on the Bridge Card, Clevenger prepared a photographic

lineup, using a computer program to identify photographs of similar individuals.  (*Id.*,

PageID.300.)  Detective Clevenger presented the photographic lineup to witnesses Brandon

Lindsay, Deloic Thomas, and Francine Edward.  Mr. Lindsay immediately and confidently

identified Petitioner, whose photograph was in the number two spot. Ms. Thomas was pretty sure

that Petitioner was the perpetrator, but she could not be 100% sure.  Ms. Thomas was uncertain

and thought that the man was either number one or number two.  (*Id.*, PageID.301-302.)

Lindore Hebert, a former police officer, testified that, on January 18, 2011, when

he was 66 years old, he went to the Kroger store at Twelve Mile and Evergreen Roads in

Southfield, Michigan.  Hebert picked up a few groceries, and was checking out in a U-Scan line at

about 8:00 a.m.  He bagged his groceries and paid in cash.  He had about $1,000.00 in his wallet

as the result of casino winnings the night before, and he planned to put the remainder of the money

in the bank when it opened.  (*Id.*, PageID.305.)  As he was placing his bagged groceries into the

cart, he was struck in the neck from behind and pushed, causing him to fall to the ground.  When

he fell, Hebert attempted to protect both his wallet and the gun he carried.  However, by the time

he reached back to his wallet, it had already been taken by the attacker.  Hebert saw that his

assailant was a black male who was wearing a gray jacket.  (*Id.*, PageID.306.)  Hebert got to his feet and chased his assailant outside the store.  The man ran down the front side of the store, toward the west, and then he turned the corner and went south into the parking lot.  By the time Hebert reached the corner of the store, the man was gone.  (*Id.*, PageID.307.)  Herbert did not see the man's face, but he was bald.  (*Id.*, PageID.309.)

James Binns, a 28-year employee at Kroger, testified that he completed his 11:00 p.m. to 7:30 a.m. shift shortly before the robbery.  While he was still in the store talking to another employee, a man approached him to ask when the pharmacy would open.  Binns spoke briefly with the man, telling him that the pharmacy opened at 9:00 a.m.  About ten minutes later, while Binns was sitting on a bench outside the store entrance, smoking a cigarette and waiting for his ride, he saw the same man, whom he identified as Petitioner, run out of the store.  The man was being chased by the victim, Mr. Hebert.  Binns recognized the man's face and the bulky gray jacket he was wearing, which was different from that worn by other customers in the store.  (*Id.*, PageID.310-311, 313.)  After Binns realized what was happening, he ran around the store in the other direction from Hebert, but he did not run into Petitioner.  Binns testified that, when shown a photographic lineup, he immediately identified Petitioner as the man he had seen.  (*Id.*, PageID.312.)

Another Kroger employee, Brandon Lindsay, testified that he worked the night shift at the Kroger and got off work between 7:00 and 8:00 a.m.  Lindsay was sitting near the pharmacy, talking, when a man came up to them and asked when the pharmacy would open.  A few minutes later, while Lindsay was cleaning up the areas he had been stocking overnight, he saw the man again.  (*Id.*, PageID.317.)  Lindsay was struck by the fact that the man had a lot of groceries in his hand, but no cart, and he thought that the man looked like he was strung out, because his eyes were

red and he was scratching.  As Lindsay was walking up the aisle toward the front of the store, he saw Petitioner going to the U-Scan.  (*Id.*, PageID.318-319.)  Lindsay testified that, when he was shown the photographic lineup, he identified Petitioner as the person he saw and spoke to.  (*Id.*)  Lindsay was not sure whether Petitioner had some hair at the time; he indicated that he recognized Petitioner's face and distinctive coat.  (*Id.*, PageID.318-320.)  Petitioner had a clean shaven head at the time of trial.  (*Id.*, PageID.320.)

Deloic Thomas, a 40-year Kroger employee, testified that she was the U-Scan cashier on duty from 6:00 a.m. to 2:30 p.m.  (*Id.*, PageID.321.)  That morning, a customer was having difficulty using a Bridge Card while at register U-3.  Another customer, a 50 to 60-year-old man was at register U-4 at the same time.  Thomas went over to assist the man at U-3.  The man explained that he was having difficulty inserting the card into the machine, and he asked her if she would do it for him.  Thomas took the card and went back to her station to scan the card. Out of the corner of her eye, she saw the man from U-3 come around the person at U-4 when the person at U-4 was putting his wallet back into his pocket.  She then saw the man from U-3 jump the man from U-4 from behind.  (*Id.*, PageID.322.)  She turned around to ask what the man was doing, and she saw the two men wrestling on the ground.  The man from register U-3 took the wallet of the man from U-4, and Thomas thought the man from U-3 was attempting to get the gun from the man from U-4.  The man from U-3 did not get the gun, and he ran out of the store.  The man from U-4 ran after him.  (*Id.*, PageID.323.)  When the men ran out of the store, Thomas started to follow, but she stopped to call 911.  (*Id.*, PageID.324.)  Thomas could not identify Petitioner as the robber with 100% certainty, though she testified that Petitioner looked like the man and she believed him to be the same man.  When viewing the photographic lineup, she indicated that she was "pretty sure but not 100%" sure that Petitioner's photo was the robber.  (*Id.*, PageID.323-325.)

Thomas identified the Bridge Card as the one she received from the man at U-3.  At the time of the incident, she described the robber as being about 5'5" tall and weighing about 200 to 250 pounds.  (*Id.*, PageID.322-323.)

Francine Edward had worked for Kroger for 20 years, and she worked the early morning day shift, which began at 6:00 a.m., when the store opened.  On the morning of the robbery, she noticed a man come in who was acting strangely.  He was hanging out in areas where customers did not usually stay.  He went by the time clock and by the pharmacy.  He walked back around the front of the registers and asked for a register to be opened, and she told him to use the U-Scan.  (*Id.*, PageID.325.)  Somewhat later, Edward heard a co-worker say, "[S]top him, stop him, he took that man's wallet."  (*Id.*, PageID.326.)  Edward described the man she saw and spoke with as a bald, clean-shaven, dark-skinned, African-American man wearing a gray jacket and jeans.  She estimated his height and weight to be 5'7" and 200 to 225 pounds.  Edward testified that she believed Petitioner to be the man she saw, notwithstanding her uncertainty at the time she viewed the photographic lineup whether the person was depicted in photograph one or two.  She explained that the photo used in the lineup seemed to have been taken at a different time.  (*Id.*, PageID.326-327.)

The prosecution rested its case, and the jury was excused.  Defense counsel moved for a directed verdict, arguing that there was no direct testimony from a person who saw the robbery and who made a confident identification of Petitioner.  The court denied the motion.  (*Id.*, PageID.328.)  After being advised on the record of his right to testify, Petitioner stated under oath that he did not wish to testify.  (*Id.*, PageID.328-329.)

The defense called Southfield Police Officer William Shadwell, who confirmed that no effort was made to fingerprint the Bridge Card or the U-Scan area Petitioner had used,

despite the fact that the evidence indicated that the robber was not wearing gloves.  (*Id.*, PageID.329.)  Shadwell testified on cross-examination, however, that, given the number of other individuals who had handled the Bridge Card, useful evidence was unlikely to be recovered.  (*Id.*, PageID.330.)

After deliberating for less than an hour, the jury found Petitioner guilty on the charge of unarmed robbery.  (T. Tr. II, ECF No. 16-10, PageID.345-346.)

Petitioner's sentencing hearing was held on August 16, 2011.  (Sentencing Hr'g Tr., ECF No. 16-11, PageID.348.)  Petitioner raised a number of objections to the Presentence Investigation Report (PSIR).  He claimed that two of the fourteen convictions in his criminal history were incorrect.  He contended that he was not convicted of the armed robbery and the assault and battery out of Hamtramck in 2000.  The court indicated that it would recheck Petitioner's record, but the alleged errors would not affect the scoring of the prior offense variables (PRVs).  (*Id.*, PageID.351.)  Counsel also reiterated Petitioner's claim that he was innocent of the offense, and he objected to the recommended minimum sentence of 8 years, when the bottom of the minimum guideline range was only 36 months.  (*Id.*, PageID.351-352.)  The prosecutor argued, however, that the recommended minimum sentence fell somewhat over the middle of the guidelines range that went as high as 11 years, 10 months.  He argued that the higher sentence was warranted, given the many excess PRV points that were not counted because of the 75-point cap and the fact that the history included six bank robberies.  The prosecution sought a sentence of 10 to 40 years.  (*Id.*, PageID.353-355.)  The court sentenced Petitioner to a prison term of 9 to 40 years, without credit for time served in jail.  (*Id.*, PageID.361.)

Petitioner appealed his conviction and sentence to the Michigan Court of Appeals. In the brief filed by counsel on July 24, 2012, Petitioner raised two grounds, substantially captured

by Grounds I and IX of the petition.  (Pet'r's Br. on Appeal, ECF No. 16-12, PageID.394.)

Petitioner also filed a pro per supplemental brief raising nine issues (Grounds II to VIII and X to

XI).  (Pet'r's Supp. Br. on Appeal, ECF No. 16-12, PageID.463-511.)  In a comprehensive, 16-

page unpublished opinion issued on January 17, 2013, the Michigan Court of Appeals affirmed

the conviction and sentence.  (Mich. Ct. App. Op., ECF No. 16-12, PageID.364-379.)

Petitioner sought leave to appeal to the Michigan Supreme Court, raising all eleven

issues presented to the court of appeals.  (Pet'r's Appl. for Leave to Appeal, ECF No. 16-3,

PageID.605-637.)  In an order issued on May 28, 2013, the Supreme Court denied leave to appeal.

(Mich. Order, ECF No. 16-13, PageID.604.)

## II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court

convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-

94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated

pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on

the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to,

or involved an unreasonable application of, clearly established federal law as determined by the

Supreme Court of the United States; or (2) resulted in a decision that was based upon an

unreasonable determination of the facts in light of the evidence presented in the state court

proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v.*

*Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme

Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and

not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v.*

*Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).   In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d 655.  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

        A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

        The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir.

11

2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.    Ground I:  Sufficiency of the Evidence

In his first ground for habeas relief, Petitioner argues that the prosecution presented evidence of identification that was insufficient to demonstrate that he was the person who committed the robbery, in violation of his right to due process.  A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*    Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as

contemplated by *Jackson*; second, deference should be given to the Michigan [trial court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Id.* at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals thoroughly considered and rejected Petitioner's sufficiency claim:

> Defendant first contends that insufficient evidence of his identity as the perpetrator was produced at trial to sustain his conviction. This Court reviews a challenge to the sufficiency of the evidence de novo. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010).  "We examine the evidence in a light most favorable to the prosecution, resolving all evidentiary conflicts in its favor, and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond reasonable doubt." *Id.* at 196. Determinations pertaining to the credibility of witnesses are within the purview of the jury.  "As the trier of fact, the jury is the final judge of credibility." *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998).

> There is no reasonable dispute that an unarmed robbery occurred.  Instead, defendant argues on appeal that there was insufficient evidence to identify him as the perpetrator.   An essential element of any criminal prosecution is the establishment of the defendant as the perpetrator of the crime at issue. *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976).  Identity may be proven by direct testimony or by circumstantial evidence. *People v Kern*, 6 Mich App 406, 409-410; 149 NW2d 216 (1967).  And "[i]t is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 2d 158 (2002).  Further, as noted by this Court, "The credibility of identification testimony is a question for the trier of fact that we do not resolve anew.   Moreover, this Court has stated that positive identification by witnesses may be sufficient to support a conviction of a crime." *People v Davis*, 241 Mich App 697, 700; 612 NW2d 381 (2000) (citations omitted).

> There existed sufficient identification evidence for a reasonable jury to conclude that the prosecution proved beyond a reasonable doubt that defendant was the perpetrator of this unarmed robbery.  Although Hebert did not see the face of his assailant, he described him as a black male with a shaved head and wearing a

gray jacket. Binns had the opportunity to view defendant in close proximity earlier that morning. Binns described defendant as wearing an over-sized gray coat and stated that the store was not particularly busy during the time of this incident and that defendant's manner of appearance and dress was sufficiently unique to distinguish him from other individuals present in the store.  Binns observed defendant running out of the store and, in part, identified defendant as the same individual he had interacted with moments earlier based on his attire.  Binns immediately, and with absolute certainty, identified defendant's photograph in the photographic array presented by the police.

Similarly, Lindsay had the opportunity to observe defendant when he approached Binns in the pharmacy area of the store.  Lindsay earlier had seen defendant walking in the store while holding groceries in his hands and had sufficient opportunity to view defendant to form an opinion regarding the suspicious nature of his appearance.  Lindsay's identification of defendant in the photographic lineup was also positive and without hesitation.

Two other employees, Edward and Thomas, also had the opportunity, shortly before the robbery, to observe defendant in the store and to have interactions with him in close physical proximity.  While Edward did not observe the robbery, after being alerted to the incident, she chased an individual running out of the store that she asserted was the same person she had interacted with earlier that morning. Edward identified this individual as defendant.  Thomas had direct contact with defendant when he requested assistance with a bridge card at the U-Scan station. While in the process of assisting defendant, she observed him approach Hebert, jump him from behind, and then run out of the store while in possession of Hebert's wallet.  Thomas asserted that she maintained a very specific recollection of defendant's eyes.

In reviewing the record, the descriptions provided by all of the witnesses were consistent with defendant's actual physical characteristics. The height range, weight, and shaved haircut described by the witnesses matched defendant's physical attributes.  All of the witnesses described the same manner of dress by the perpetrator within the store and of the individual seen running from the store after the robbery.

In addition, defendant's bridge card was left at the store, placing him at the scene at the time of the events.  Although defendant contends that someone else left the bridge card behind, there was no evidence to suggest that this was the case. "Even [when] relying on circumstantial evidence, the prosecution need not negate every reasonable theory consistent with the defendant's innocence, but merely introduce evidence sufficient to convince a reasonable [factfinder] in the face of whatever contradictory evidence the defendant may provide."  *People v Konrad*, 449 Mich 263, 273 n 6; 536 NW2d 517 (1995).

To the extent defendant implies an issue regarding his in-court identification at trial by the witnesses, this Court has considered the following factors in determining whether an independent basis exists for the admission of in-court identifications:

> (1) prior relationship with or knowledge of the defendant; (2) opportunity to observe the offense, including length of time, lighting, and proximity to the criminal act; (3) length of time between the offense and the disputed identification; (4) accuracy of description compared to the defendant's actual appearance; (5) previous proper identification or failure to identify the defendant; (6) any prelineup identification lineup of another person as the perpetrator; (7) the nature of the offense and the victim's age, intelligence, and psychological state; and (8) any idiosyncratic or special features of the defendant.  [*Davis*, 241 Mich App at 702-703.]

> Defendant was observed by four different witnesses in close physical proximity within the store immediately before and during the robbery.  At least two of the witnesses identified defendant as the perpetrator with absolute certainty in a photographic lineup, while the remaining two witnesses indicated substantial certainty that defendant's photograph was close in resembling their recollection of the perpetrator's appearance.  Descriptions provided to police by the witnesses were consistent with defendant's actual physical attributes.  There was no evidence to suggest that any of the witnesses was under any disability or impediment to engage in an accurate observation of defendant.  Therefore, it was reasonable for the jury, as the finder of fact, to find the testimony of these witnesses to be credible and to reject defendant's contention that he did not attempt to use his bridge card in the store on that day.  Consequently, sufficient evidence exists to sustain defendant's conviction.

(Mich. Ct. App. Op., ECF No. 16-12, PageID.365-367.)  Although the Michigan Court of Appeals cited only state cases, the standard it recited for evaluating the sufficiency of the evidence was directly drawn from *Jackson v. Virginia*, 443 U.S. 307 (1979).  Indeed, the Michigan Supreme Court case on which it relied expressly cited *Jackson*.  *See People v. Lemmon*, 576 N.W.2d 129, 133 (Mich. 1998).  The court therefore applied the appropriate federal constitutional standard in conducting its review.

The court of appeals' decision also constituted a patently reasonable application of that standard.  Four witnesses identified Petitioner, including two witnesses whose identification

15

was immediate and certain.  In addition, the victim himself chased the robber out of the store and described the man as being bald and wearing the same clothing as described by the other witnesses. Further, Deloic Thomas testified that, just before robbing the victim, Petitioner gave her his Bridge Card to enter for his purchases.  The Bridge Card, which she still had in her possession, contained Petitioner's name.  Thomas identified Petitioner at trial, described his appearance and clothing at the time of the incident, and began to chase after him.  All of the evidence was substantially consistent with the description of Petitioner at the time of the incident, his clothing, and the sequence of events.  Taken together, that evidence was more than sufficient to support the jury's finding on the element of identification.  Petitioner unquestionably fails to overcome the double deference owed to the state court's application of the *Jackson* standard.  *Davis*, 658 F.3d at 531.

## II.    Grounds II & VI:  Improper Arrest and Preliminary Examination

In his second ground for relief, Petitioner argues that the warrant for his arrest was based on a defective complaint, because the detective who completed the affidavit had no personal knowledge of the crime.  Similarly, in Ground VI, Petitioner claims, in part, that his initial arrest was made without a warrant and that the evidence submitted at the preliminary examination was insufficient.

To the extent that Petitioner intends to suggest that the complaint was defective under state law, his claim is not cognizable in this habeas proceeding.  "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'"  *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases).  It is not the province of a

16

federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Moreover, Petitioner's claims concerning his arrest and preliminary examination do not provide any constitutional basis for habeas corpus relief.  At best, Petitioner's allegations suggest that the original complaint and subsequent bindover were not based upon a proper showing of probable cause.  It is well-settled, however, that a convicted defendant cannot upset a conviction on the argument that no probable cause was shown prior to conviction.  *See United States v. Saussy*, 802 F.2d 849, 852 (6th Cir. 1986).  Challenges to the propriety of initial proceedings in the state courts are not cognizable in federal habeas corpus, because they do not undermine the validity of a conviction.  *See Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (illegal arrest or detention does not void a subsequent conviction).  The method by which petitioner's presence was procured at trial does not provide a basis for invalidating his criminal conviction.  *See Immigration & Naturalization Service v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984) ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred.");  *Frisbee v. Collins*, 342 U.S. 519, 522 (1952); *Ker v. Illinois*, 119 U.S. 436, 444 (1886); *Browning v. Jabe*, No. 88-1307, 1990 WL 6943, at * 1 (6th Cir. Feb. 1, 1990) ("petitioner's arguments that his arrest was absent probable cause . . . [are] irrelevant, as an unlawful arrest is not a defense to a valid conviction.") (citing *United States v. Crews*, 445 U.S. 463, 474 (1980)).  Consequently, even if petitioner were able to show that either the complaint or the bindover was not supported by a sufficient factual showing, this in no way impugns his conviction, which was based upon a jury verdict, not on the complaint.  *See United States v. Mechanik*, 475 U.S. 66, 73

(1986).  Accordingly, Petitioner is not entitled to habeas relief on his second and sixth habeas grounds.

III.     <u>Grounds III & VI:  Defects in the Information/Complaint</u>

In his third habeas ground, Petitioner argues that he was denied his rights under the Sixth Amendment when the prosecutor failed to attach to the information a list of all witnesses known to the prosecutor, including witness Binns.  He also alleges that the failure to attach the list of witnesses violated Mich. Comp. Laws § 747.40a.   In a part of his sixth ground for habeas relief, Petitioner asserts that the trial court violated his rights under the Fourth and Fourteenth Amendments when it denied his motion to quash the information on the basis of the defects alleged in Ground III.

To the extent that Petitioner rests his claim on a violation of Mich. Comp. Laws § 747.40a, his claim is not cognizable on habeas review.  *See Wilson*, 562 U.S. at 5; *Blackledge*, 431 U.S. at 75 n.7 (permitting habeas relief solely for federal constitutional error); *Bradshaw*, 546 U.S. at 76.  The decision of the state courts on a state-law issue is binding on this Court sitting on habeas review.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

In addition, Petitioner's constitutional claims are wholly meritless.  The Supreme Court has never held that the constitution requires the listing of prosecution witnesses in the criminal complaint.  Instead, the Due Process Clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him so as to provide him an adequate opportunity to prepare his defense.  *See*, *e.g.*, *In re Ruffalo*, 390 U.S. 544 (1968); *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir. 1977).  This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged.

18

*Combs v. Tennessee*, 530 F.2d 695, 698 (6th Cir. 1976).  "An indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings."  *Mira*, 806 F.2d at 639.  Beyond notice, challenges to the propriety of initial proceedings in the state courts are not cognizable in federal habeas corpus, because they do not undermine the validity of a conviction.  *See Gerstein*, 420 U.S. at 119; *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) ("Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review."); *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986); *Lewis v. Procunier*, 746 F.2d 1073, 1075 (5th Cir. 1984) (allegation of defective indictment insufficient to state a claim for habeas relief); *Johnson v. Turner*, 429 F.2d 1152, 1154 (10th Cir. 1970) (alleged defect in state complaint not cognizable in habeas corpus); *Hogan v. Ward*, 998 F. Supp. 290, 294-95 (W.D.N.Y. 1998) (petitioner not entitled to relief on ground that state felony complaint was defective).

Petitioner does not challenge the sufficiency of the notice provided by the information.  As a result, Petitioner is not entitled to habeas relief on his claims concerning the adequacy of the information.

IV.    Grounds IV, V, & VI:  Suggestive Identifications

Petitioner raises several claims concerning the witnesses' identifications of him as the perpetrator of the robbery.  In Ground IV, he contends that his right to due process was violated by James Binns' in-court identification.  In Ground V, he asserts that the photographic lineup procedure was highly suggestive, in violation of his rights to due process and equal protection under the Fourteenth Amendment.  In part of Ground VI, Petitioner contends that his motion to suppress the identifications should have been granted.

Due process provides a "check on the admission of eyewitness identification,
applicable when the police have arranged suggestive circumstances leading the witness to identify
a particular person as the perpetrator of a crime." *Perry v. New Hampshire*, 565 U.S. 228, 232
(2012). As summarized in *Perry*, the Supreme Court has developed a two-part test for determining
whether evidence gathered from an eyewitness identification must be excluded from trial due to
the unduly suggestive nature of the identification procedure. *Id.* at 238-39 (citing *Neil v. Biggers*,
409 U.S. 188, 196 (1972), and *Manson v. Braithwaite*, 432 U.S. 98, 107, 109 (1997)). First, the
*Perry* court stated, "due process concerns arise only when law enforcement officers use an
identification procedure that is both suggestive and unnecessary." *Id.* Second, even when the
police use such a procedure, suppression of the resulting identification is required only when,
under the totality of the circumstances, the "improper police conduct created a 'substantial
likelihood of misidentification.'" *Id.* at 239 (quoting *Braithwaite*, 432 U.S. at 116). The central
concern in the second part of the inquiry is the reliability of the identification, and whether "the
'indicators of [a witness'] ability to make an accurate identification' are 'outweighed by the
corrupting effect' of law enforcement suggestion." *Id.* (quoting *Braithwaite*, 432 U.S. at 114, 116).

### A.    In-Court Identification

In *Perry*, the Supreme Court recognized that in-court identifications are inherently
"suggestive." *Id.*, 556 U.S. at 244. ("Most eyewitness identifications involve some element of
suggestion. Indeed, all in-court identifications do."). However, the fact that an identification
procedure is suggestive does not, standing alone, implicate due process protections. *Id.* at 239.
Rather, there must be "improper law enforcement activity" before a suggestive identification
requires further scrutiny. *Id.* at 239.   Because the *Perry* Court used in-court identifications as
examples of suggestive identifications that do not implicate due process protections, and because

Petitioner offers no evidence of "improper law enforcement activity" here, Petitioner cannot demonstrate constitutional error based on the witnesses' in-court identifications.  Although *Perry* was decided after Petitioner's trial and appeal, its clarification of existing Supreme Court precedent renders the state-court's decision on this issue patently reasonable.

### B.    Photographic Lineup

In Ground V, Petitioner claims that the six-person photographic lineup was highly suggestive and violated his right to due process and equal protection under the Fourteenth Amendment.  He contends that the identification testimony of Binns, Thomas, Edward, and Lindsay therefore should not have been admitted.

As I earlier discussed, and as with all identifications, in determining whether a photo lineup presents an unacceptable risk of misidentification, courts employ a two-step analysis. *Haliym v. Mitchell*, 492 F.3d 680, 704 (6th Cir. 2007) (quoting *Stovall v. Denno*, 388 U.S. 293, 301–02 (1967), and citing *Biggers*, 409 U.S. at 197).   The first step requires a determination as to whether the identification was "unnecessarily suggestive."  *Id.*  To make this determination, "the court may consider 'the size of the [photographic] array, the manner of its presentation by the officers, and the details of the photographs themselves.'"  *United States v. McComb*, 249  F. App'x 429, 437 (6th Cir. 2007) (citing *United States v. Sanchez*, 24 F.3d 1259 (10th Cir. 1994)); *see also United States v. Wade*, 388 U.S. 218 (1967).   The second step of the inquiry requires consideration of a number of factors:

> The factors considered in making this determination include: "1) the witness's opportunity to view the criminal at the time of the crime; 2) the witness's degree of attention; 3) the accuracy of the witness's prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and 5) the time between the crime and the confrontation."

*McComb*, 249 F. App'x at 437 (citing *United States v. Beverly*, 369 F.3d 516 (6th Cir. 2004)); *see also Haliym*, 492 F.3d at 704 (citing *Brathwaite*, 432 U.S. at 114, and *Biggers*, 409 U.S. at 199-

200.  If "the first step of the requisite analysis ends in the government's favor, [the court] need not

address" the second step of the inquiry.  *United States v. Stamper*, 91 F. App'x 445, 462

(6th Cir. 2004).

> The court of appeals addressed the claim, as follows:
>
> In . . . his Standard 4 brief, defendant argues that the photographic lineup
> was impermissibly suggestive and violated his right to due process. . . . To sustain
> a due process challenge to an identification lineup, a defendant must show that the
> pretrial identification procedure was so suggestive in light of the totality of the
> circumstances that it led to a substantial likelihood of misidentification.  *Id.* at 302.
> "[I]mproper suggestion in photographic identification procedures may arise when
> the witness is shown . . . a group of people in which one person is singled out in
> some way."  *People v McAllister*, 241 Mich App 466, 472; 616 NW2d 203 (2000).
> "[T]he remedy for an unduly suggestive identification procedure is suppression of
> the in-court identification unless there is an independent basis for its admission."
> *Davis*, 241 Mich App at 702.
>
> A photographic array is not deemed to be suggestive if "it contains some
> photographs that are fairly representative of the defendant's physical features and
> thus sufficient to reasonably test the identification."  *[People v.] Kurylczyk*, 443
> Mich [289, 304 (1993)] (quotations omitted).  "[D]ifferences in the composition of
> photographs, in the physical characteristics of the individuals photographed, or in
> the clothing worn by a defendant and the others pictured in a photographic lineup
> have not been found to render a lineup impermissibly suggestive."  *Id.* at 304-305.
> Here, a review of the photographic arrays reveals that they indeed were fairly
> representative of "defendant's physical features and thus sufficient to reasonably
> test the identification."  Defendant's contention that the photographs were labeled
> with identifying information is simply mistaken.  The photographic array shown to
> the witnesses contained only six photographs, with defendant's photograph in
> position two of the array, and sequential numbering of the photographs for the
> witnesses to indicate which photograph was selected.  This procedure is typical and
> cannot, by any stretch of the imagination, be construed as suggestive.  Defendant's
> assertion that the photographs contained in the array did not indicate height or
> weight is not pertinent.  The concern in presenting the photographs is to identify a
> suspect, and hence, the focus is primarily on facial features.

(Mich. Ct. App. Op., ECF No. 16-12, PageID.370-372.)  Although the state court did not expressly

cite established precedent of the United States Supreme Court, the standard it recited is consistent

with the federal constitutional standard, and the state cases on which it relied themselves relied on

Supreme Court precedent.  *See, e.g., People v. Kurylczyk*, 505 N.W.2d 528, 534 (Mich. 1993) (citing, *inter alia*, *Stovall*, 386 U.S. at 293, and *Biggers*, 409 U.S. at 196).

Petitioner makes no serious attempt to argue that the six-photo photographic lineup was unduly suggestive, beyond mentioning in Ground V that he was the only individual wearing a black t-shirt in the six photographic images.[4]  However, because the wearing of a black t-shirt was in no way suggestive of any fact in issue, the purported difference between the images is immaterial.  Petitioner does not dispute Officer Clevenger's testimony that indicated that the placement of photographs was randomly generated by a computer.  Absolutely no case law supports a conclusion that a photographic array is unduly suggestive simply because the defendant is wearing a different color t-shirt.

Moreover, as the court of appeals held, the record contains no evidence that the photographs were themselves problematic or that the police presentation of the array was suggestive.  As a consequence, Petitioner fails to demonstrate any error in the state court's conclusion that the array was not unduly suggestive.  Because Petitioner fails to meet the first step of the inquiry, the Court will not address the second step.  *Stamper*, 91 F. App'x at 462.  Petitioner therefore is not entitled to habeas relief on his fifth habeas ground.

## C.    Motion to Suppress

Petitioner suggests that the trial court committed constitutional error when it denied his motion to suppress the witness identifications made at the preliminary examination and during a photographic lineup.  As discussed, Petitioner has failed to demonstrate that his Fourteenth

---

[4] In both the trial court and the state appellate courts, Petitioner initially argued that the photographs were improperly labeled with identifying information.  The trial court found the representation to be unfounded.  (7/13/11 Pretrial Hr'g Tr., ECF No. 16-8, PageID.260-261.)  The court of appeals also found the claim to be factually unsupported.  (Mich. Ct. App. Op., ECF No. 16-12, PageID.372.)  Petitioner appears to have dropped the argument on habeas review.  Even had he continued to raise the argument, he would not be entitled to relief, given that Petitioner has wholly failed to overcome the presumption of correctness accorded the state courts' factual findings.  *See* 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429.

Amendment rights were violated by either identification procedure.  As a consequence, Petitioner was not entitled to suppression of those identifications.

V.    Ground VII:  Attorney Not Present for Photographic Lineup

Petitioner argues in Ground VII of his petition that his Sixth Amendment rights were violated when he was not represented by defense counsel at the time the photographic lineup was presented to witnesses Binns, Thomas, Lindsay, and Edward.

The Sixth Amendment guarantees a right to counsel at all critical stages of a criminal proceeding.  *Montejo v. Louisiana,* 556 U.S. 778, 786 (2009).  However, the Supreme Court has consistently held that "a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him."  *Kirby v. Illinois*, 406 U.S. 682, 689-90 (1972) (refusing to extend the right to counsel to a preindictment corporeal lineup).  The court consistently has applied this chronological, bright-line test, under which the right to counsel is triggered by the formal initiation of judicial proceedings. *See Moran v. Burbine*, 475 U.S. 412 (1986) (rejecting claims that Sixth Amendment right to counsel should attach when confessions during police interrogation about crimes not yet charged may well seal suspect's fate); *United States v. Gouveia*, 467 U.S. 180, 192-93 (1984) (no right to counsel during preindictment administrative detention of inmates).

In *United States v. Wade*, 368 U.S. 218 (1967), the Supreme Court recognized that a postindictment corporeal lineup was a critical stage of the prosecution at which the accused was entitled to the aid of counsel.  *Id.* at 237.  However, six years later, the Supreme Court expressly rejected the proposition that a defendant had a Sixth Amendment right to counsel at any photographic lineup, regardless of whether it was conducted pre- or postindictment.  *United States v. Ash*, 413 U.S. 300, 321 (1973) (noting that the accused is not present at a photographic lineup).

24

Instead, in the context of photographic lineups, the rights of the accused are primarily protected by the Due Process Clause, not the Sixth Amendment.  *Id.* at 320.

Under these authorities, Petitioner's Sixth Amendment claim is doubly barred. According to the Michigan Court of Appeals, Petitioner acknowledged that the lineup in question was prepared and viewed by the witnesses before criminal proceedings had been initiated against him.  (Mich. Ct. App. Op., ECF No. 16-12, PageID.372.)  Petitioner does not dispute that factual finding here, and it is entitled to a presumption of correctness.  28 U.S.C. § 2254(e).  As a result, the Sixth Amendment had not yet attached.  *See Kirby*, 406 U.S. at 689-90.  Moreover, the lineup in issue was a photographic one, which does not trigger the same concerns as a corporeal lineup and does not require the presence of defense counsel.  *See Ash*, 413 U.S. at 320-21.

For these reasons, Petitioner is not entitled to relief on his seventh habeas ground.

VI.    Ground VIII:  Absence of Competency Examination

Petitioner next complains that he was deprived of his rights to equal protection and due process when his retained counsel waived the competency hearing already ordered by the court.  Petitioner alleges that, beginning in January 2009, he was under a psychiatrist's treatment for bipolar disorder, schizophrenia, and severe depression, and he was prescribed Seroquel and Lexapro.  Once he arrived at the Oakland County Jail, however, the jail psychiatrist changed his medications to Remeron and Risperdol.  Petitioner contends that the medication changes caused him to become delusional, to hallucinate, and to behave erratically, which interfered with his ability to communicate with his appointed counsel.  As a consequence, appointed counsel requested a competency examination, and the court ordered the examination and directed that Petitioner be transferred to the Forensic Center for that purpose.  Petitioner states that he received a letter from his attorney on March 23, 2011, indicating that the competency evaluation had been

ordered.  Two months later, Petitioner retained new counsel.  At a pretrial hearing held on May

24, 2011, Petitioner's newly retained counsel made the following representations:

> MR. MEINECKE [DEFENSE COUNSEL]:  Defense counsel requested – previous defense counsel requested a review at the Forensic Center.  I don't know whether the defendant has actually been seen by the Forensic Center yet.
>
> MR. WEINER [PROSECUTOR]:  Have you gone there?
>
> MR. MEINECKE:  But I don't –
>
> MR. WEINER:  No.
>
> THE COURT:  (Indiscernible).
>
> MR. MEINECKE:  -- I know that it was ordered, so.
>
> MR. WEINER:  Okay, he has not gone there so we might as well put it over for –
>
> THE COURT:  (Indiscernible.)
>
> MR. WEINER:  What?  (Indiscernible discussion with defendant.) *He doesn't want to go now, okay.  He would like to cancel that and put it on the docket ready for trial and things like that.*

(5/24/11 Pretrial Hr'g Tr., ECF No. 16-6, PageID.239-240 (emphasis added).)

In reviewing Petitioner's claim, the Michigan Court of Appeals concluded that Petitioner had waived his right to a competency examination.  As is apparent from the recited portion of the May 24, 2011, pretrial hearing, Petitioner's new counsel advised the court that Petitioner no longer wished to proceed with the psychiatric evaluation earlier requested and ordered.  Although Petitioner argues in his habeas petition that he was not in court for his attorney's waiver of the competency hearing, it is apparent from the record recited above that Petitioner was both present and actively participated in the decision to waive the competency hearing.  The court of appeals therefore reasonably concluded on the record that Petitioner had waived the claim, and his claim therefore arguably is procedurally defaulted and not subject to habeas review unless

26

Petitioner can show cause for his default and actual prejudice arising therefrom. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Engle v. Isaac*, 456 U.S. 107 (1982). As earlier discussed, however, because Petitioner's claim arguably impacts his competency to waive the competency evaluation and because he claims ineffective assistance of counsel to excuse his procedural default, the default issue raises more questions than the merits of the claim. *Hudson*, 351 F.3d at 216 (citing *Lambrix*, 520 U.S. at 525). I therefore will proceed to the merits without resolving the question of procedural default. *Id.*

A criminal defendant who is incompetent may not be tried. *Godinez v. Moran*, 509 U.S. 389, 396 (1993); *Drope v. Missouri*, 420 U.S. 162, 171 (1975). The test for a defendant's competency to stand trial is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 411 (1960); *see also Godinez*, 509 U.S. at 396; *United States v. Denkins*, 367 F.3d 537, 547 (6th Cir. 2004) (quoting *United States v. Ford*, 184 F.3d 566, 580 (6th Cir. 1999). In applying the *Dusky* standard, the Sixth Circuit repeatedly has recognized "that 'even if [the defendant is] mentally ill, it does not follow that because a person is mentally ill he is not competent to stand trial.'" *United States v. Dubrule*, 822, F.3d 866, 875-76 (6th Cir. 2016) (quoting *United States v. Davis*, 93 F.3d 1286, 1290 (6th Cir. 1996) (other internal citations omitted). *See also Newfield v. United States*, 565 F.2d 203, 206 (2d Cir. 1977)); *United States v. Miller*, 531 F.3d 340, 350 (6th Cir. 2008) ("the bar for incompetency is high"). Nor is a defendant "rendered incompetent . . . merely because he cannot get along with his counsel or disapproves of his attorney's performance." *Miller*, 531 F.3d at 349. "[T]he standard . . . for requiring competency hearings prior to trial or the entry of a guilty

plea is not merely whether extant evidence raises 'doubt' as to the defendant's capacity to stand trial, but rather whether evidence raises a 'bona fide doubt' as to a defendant's competence." *Warren v. Lewis*, 365 F.3d 529, 533 (6th Cir. 2004).

Petitioner fails even to allege that he was incompetent at the time he stood trial.  At best, he contends that he had a mental illness and that his new psychiatric medications caused delusions and erratic behavior for some period.  Petitioner acknowledges that the medication change occurred in late January 2011, immediately after he was arrested and evaluated by the jail psychiatrist.  During the next two months, Petitioner participated in numerous efforts to enter into a plea agreement, making clear his desire for a *Cobbs* agreement that did not exceed 30 to 36 months.  (*See* 2/15/11 Arraignment Tr., ECF No. 16-3, PageID.220-221; 3/1/11 Pretrial Hr'g Tr., ECF No. 16-4, PageID.226-228; 3/8/11 Pretrial Hr'g Tr., ECF No. 16-5, PageID.234-235.) Moreover, only on May 24, 2011, approximately four months after his medication change, did Petitioner waive his competency hearing.  Petitioner does not allege and the record does not reflect any continuing problem with Petitioner's medication or his competency.  Although the trial court granted Petitioner a competency hearing sometime before March 23, Petitioner at no time demonstrated erratic behavior in a recorded proceeding.  Indeed, he expressed his understanding of the plea offer made to him, though he declined to accept that offer, because he did not deem it sufficiently advantageous.  (*See* T. Tr. I, ECF No. 9, PageID.268.)  Finally, Petitioner's trial did not take place for another two months after he waived his competency examination.  On the morning of trial, Petitioner engaged in a colloquy with the court, during which he was advised that the *Cobbs* agreement to be sentenced at the bottom of the guidelines remained available to him. Petitioner again elected to proceed to trial.  Nothing about Petitioner's interaction with the court suggested a lack of competency.

In sum, on the entire record, Petitioner fails to raise any doubt, much less a "bona fide doubt" as to his competence to stand trial.  *Warren*, 365 F.3d at 533.  Petitioner therefore is not entitled to habeas relief on his eighth habeas ground.

VII.    Ground IX:  Unconstitutional Sentence

Petitioner argued in the state courts that his sentence of 9 to 40 years was disproportionate to his offense under the analysis enunciated by the Michigan Supreme Court in *People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990), and its progeny.  He also argued that the sentence violated the Eighth Amendment.

To the extent Petitioner argues that his sentence was disproportionate under *Milbourn*, 461 N.W.2d 1, he fails to raise a cognizable habeas claim.  In *Milbourn*, the court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9-10; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003).  It is plain that *Milbourn* was decided under state, not federal, principles.  *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at * 2 (6th Cir. Apr. 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994).  As previously discussed, a federal court may grant habeas relief solely on the basis of federal law and has no power to intervene on the basis of a perceived error of state law. *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41.  Thus, Petitioner's claim based on *Milbourn* is not cognizable in a habeas corpus action.

With respect to Petitioner's Eighth Amendment claim, the United States Constitution does not require strict proportionality between a crime and its punishment.  *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000).

29

"Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)).  A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)).  Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).  Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law.  Petitioner's sentence therefore does not present the extraordinary case that runs afoul of the Eighth Amendment's ban on cruel and unusual punishment.

VIII.    <u>Ground X:  Delay in Transcribing Transcripts</u>

Petitioner next argues that he was denied due process and equal protection when the court reporter failed to timely deliver transcripts of the pretrial hearings.  According to Petitioner's chronology of events, He was sentenced on August 16, 2011, at which time he expressed his desire to appeal and requested appointed counsel.  His first appellate attorney was appointed on October 28, 2011, and, over the next week, the attorney requested transcripts of the pretrial, trial, and sentencing hearings.  Before those transcripts were produced, the attorney withdrew from the case in December 2011.  On December 29, 2011, substitute appellate counsel was appointed.  New counsel again ordered transcripts of the pretrial hearings, which, according

30

to Petitioner, were not provided until April 2012.  Petitioner contends that the delay of eight months

between sentencing and the production of transcripts violated Michigan Court Rules 8.108(e) and

7.210(B)(3)(iv), and thereby violated his rights to due process and equal protection under the

Fourteenth Amendment.  Petitioner argues that the delay prejudiced him in an unspecified manner.

He contends that he should be entitled to a new trial due to that prejudice.

> The Michigan Court of Appeals rejected Petitioner's claim, as follows:

> Defendant next asserts that his conviction should be vacated because the court reporter did not timely produce copies of the requested transcripts for appeal.  A claim is not preserved if it is not raised before, addressed by or decided by the trial court.  *Carines*, 460 Mich at 763; *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007).  The issue is not preserved as defendant did not file a motion or seek any intervention regarding the production of the requested transcripts and only raised this allegation for the first time in defendant's Standard 4 brief.

> The following is the chronology of pertinent dates regarding defendant's appeal and request for the production of transcripts.  The judgment of sentence was filed on August 18, 2011.  A claim of appeal and order appointing attorney was filed on October 28, 2011, requesting the preparation of defendant's sentencing and jury trial transcripts.  On November 3, 2011, another claim of appeal and order appointing counsel was filed, which requested the preparation of the motion transcript from the hearing conducted July 13, 2011.  The court reporter filed a certificate of ordering transcripts on appeal on November 7, 2011.  On November 5, 2011, a third claim of appeal and order appointing counsel was filed requesting the production of five additional transcripts for the four pretrial hearings conducted from March 1, 2011, through May 31, 2011, and a copy of the transcript of defendant's arraignment.  Both volumes of the jury trial transcripts and the sentencing transcript were filed with the lower court on January 27, 2012.  A copy of the hearing transcript of July 13, 2011, was filed on February 8, 2012.  The arraignment transcript and remaining pretrial transcripts were filed on April 9, 2012.  Hence, in just over a five-month period, all of the transcripts were ordered and delivered.

> First, defendant's reliance on MCR 7.210(B)(3)(b)(iv) is misplaced because it refers only to time frames for the provision of transcripts in interlocutory appeals. Defendant's appeal is a claim of right, and no commensurate provision of the court rule dictates the time frame for production of transcripts for an appeal of right. Second, MCR 8.108 is irrelevant as it merely "prescribes the duties of court reporters and recorders, the procedure for certifying them, the effect of noncertification, objections to certification, and display requirements."  Defendant

alleges the court reporter violated MCR 8.108(E), which indicates that a "court reporter . . . shall furnish without delay . . . a transcript of the records taken by him or her . . . to any party on request." The dates on which the transcripts were ordered and filed with the court indicates a lapse of only three to five months, which cannot be construed as a significant delay.

Defendant has not demonstrated that he suffered any burdensome delay in this matter regarding the consideration of his appeal. Defendant does not suggest that the merits of his appeal have been impacted by the asserted delay in receipt of the requested transcripts. Even if a delay in appellate review were deemed to have occurred, such a delay "does not automatically entitle a defendant to a new trial." *People v Missouri*, 100 Mich App 310, 325; 299 NW2d 346 (1980). Rather, "[t]he remedy for dilatory review is review itself." *Id.*

(Mich. Ct. App. Op., ECF No. 16-12, PageID.374-375 (footnote omitted).) The timeline described by the court of appeals is fully consistent with the docket entries in the circuit court. (Cir. Ct. Case Summary, ECF No. 16-1, PageID.183.)

To the extent that Petitioner argues that his right to due process was infringed by a violation of the Michigan Court Rules, his claim is not cognizable on habeas review. *See Wilson*, 562 U.S. at 5; *Blackledge*, 431 U.S. at 75 n.7 (permitting habeas relief solely for federal constitutional error); *Bradshaw*, 546 U.S. at 76. The decision of the state courts on this state-law issue is binding on this Court sitting on habeas review. *See Wainwright*, 464 U.S. at 84.

Moreover, Petitioner fails to demonstrate the existence of a due process violation. The speedy trial guarantee of the Sixth Amendment applies only to proceedings in the trial court. *United States v. Smith*, 94 F.3d 204, 206 (6th Cir. 1996). Delays in appeals, in contrast, are governed by the Due Process Clause. *Id.* at 206-07. Although there exists no due process right to an appeal, "an appeal must nonetheless comport with due process 'if a State has created appellate courts as "an integral part" of its criminal justice system. '" *Id.* (quoting *Harris v. Champion,* 15 F.3d 1538, 1558 (10th Cir. 1994) (quoting *Evitts v. Lucey,* 469 U.S. 387, 393 (1985))). In evaluating due process claims involving the delay in an appeal or transcripts on appeal, the courts have applied the four-factor speedy-trial test set forth in *Barker v. Wingo,* 407 U.S. 514 (1972),

with slight modifications. *Smith*, 94 F.3d at 207 (citing cases).  That test requires consideration of the following: the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530.  However, "unless there is a period of delay that appears, on its face, to be unreasonable under the circumstances, 'there is no necessity for inquiry into the other factors that go into the balance.'"   *Smith*, 94 F.3d at 209 (quoting *Barker*, 407 U.S. at 530).  While the first factor requires a case-by-case inquiry, courts typically look to relatively egregious delays. *Smith*, 94 F.3d at 209 (three-year delay conceded by government to be sufficient to trigger inquiry) (citing *United States v. Mohawk*, 20 F.3d 1480, 1485 (9th Cir. 1994) (ten-year delay "is 'extreme' by any reckoning")); *Harris*, 15 F.3d at 1559-60 (two-year appellate delay will create a rebuttable presumption that the constitutional threshold has been crossed; *Simmons v. Reynolds*, 898 F.2d 865, 868 (2d Cir. 1990) (six years "was clearly excessive"); *United States v. Johnson*, 732 F.2d 379, 382 (4th Cir. 1984) (two-year delay "is in the range of magnitude" for triggering inquiry).

As the Michigan Court of Appeals observed, Petitioner experienced only a five-month delay from the time of request to receiving all of the transcripts on appeal.  No Supreme Court authority suggests that such a brief delay rises to the level of a due process violation or triggers inquiry on the remaining factors.  *See United States v. Howard*, 216 F. App'x 463, 477 (6th Cir. 2007) (discussing 13-month delay) (citing *United States v. Pratt*, 645 F.2d 89, 91 (1st Cir. 1981) (holding that nine month delay in receiving transcripts did not rise to the level of a due process violation)).

Moreover, even if the Court were required to look further, Petitioner utterly fails to demonstrate that the delay impaired his ability to present his claims on appeal.  By way of the brief filed by counsel and Petitioner's supplemental brief on appeal, Petitioner was able to present all

33

eleven issues on appeal, and the Michigan Court of Appeals scrutinized those claims with care. Nothing about the limited delay in receiving transcripts rises to the level of a due process violation.

Further, although Petitioner argues that he has been denied equal protection, he provides no basis for that assertion.  The Supreme Court has recognized that, if a state provides transcripts of trial court proceedings to those appellants who can afford to pay for them, it violates equal protection if it fails to provide or unnecessarily delays providing such transcripts to an indigent defendant.  *Griffin v. Illinois*, 351 U.S. 12, 18-19 (1956).  Nevertheless, as the Supreme Court has observed on multiple occasions, "neither the Equal Protection Clause of the Fourteenth Amendment, nor the counterpart equal protection requirement embodied in the Fifth Amendment, guarantees 'absolute equality or precisely equal advantages.'"  *United States v. MacCollom*, 426 U.S. 317, 324 (1976) (quoting *San Antonio School Dist. v. Rodriguez*, 411 U.S. 1, 24 (1973)).

Beyond making a conclusory allegation that his right to equal protection was violated, Petitioner neither argues nor shows that the production of his transcripts was treated differently because of his indigency.  Petitioner does not even attempt to demonstrate that the court reporter produces transcripts for non-indigent appellants in a shorter time than for indigent defendants, much less to show that any difference in treatment violates the Equal Protection Clause.

For all of these reasons, I recommend that Petitioner's tenth habeas ground be denied.

IX.    Ground XI:  Ineffective Assistance of Counsel

In his final ground for habeas relief, Petitioner raises a variety of claims of ineffective assistance of counsel.  First, he claims that his trial attorney was ineffective in failing to object to the fact that Petitioner was arrested on a complaint that was not signed by the magistrate

34

until a day later.  Second, he argues that his attorney failed to object to the testimony of James Binns at the preliminary examination.  Third, Petitioner contends that defense counsel failed to cite case law and failed to use the entire preliminary examination transcript in his motion to quash the information.  Fourth, Petitioner asserts that defense counsel failed to object when the trial court proceeded with trial without having Petitioner evaluated for his competence to stand trial.  Fifth, Petitioner claims that his trial attorney neglected to interview or investigate the psychiatrist and psychologist who treated Petitioner at the Detroit East Community Mental Health Center and the Oakland County Jail and failed to determine that Petitioner was on psychotropic medications. Sixth, Petitioner argues that defense counsel failed to interview the Kroger store manager about the poor quality surveillance cameras that could not verify the identifications of the prosecution witnesses.  Finally, Petitioner argues that his appellate attorney rendered ineffective assistance by presenting only Grounds I and IX on appeal.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as

35

they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The Michigan Court of Appeals discussed at length each of the claimed trial errors:

Finally, defendant concludes the issues in his Standard 4 brief by asserting a multitude of claims regarding the ineffective assistance of counsel and contending that the cumulative effect of these errors deprived him of a fair trial.  Defendant failed to preserve this issue because he did not raise a claim of ineffective assistance of counsel in the lower court by moving for a new trial or requesting an evidentiary hearing.  *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000).  Unpreserved claims of ineffective assistance of counsel are "limited to mistakes apparent from the record."  *People v Brown*, 279 Mich App 116, 140; 755 NW2d 664 (2008).

Both the United States Constitution and the Michigan Constitution guarantee criminal defendants the right to effective assistance of counsel.  US Const, Am VI; Const 1963, art 1, § 20.  To establish ineffective assistance of counsel, a defendant must show that (1) his trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's error, the result of

the proceedings would have been different. Counsel is presumed to have provided effective assistance, and the defendant must overcome a strong presumption that counsel's assistance was sound trial strategy.  [*People v Horn*, 279 Mich App 31, 37-38 n 2; 755 NW2d 212 (2008) (citations omitted).]

Addressing defendant's contentions involving counsel's failure to challenge the information, complaint, and warrant and counsel's failure to object to Binns's testimony at trial, defendant has failed to demonstrate that counsel was ineffective. There is no record evidence to support defendant's various allegations regarding deficiencies in the information, complaint, or warrant.   Plus, the record demonstrates that Binns was included on the prosecutor's witness list, which obviates defendant's main contention with the propriety of Binns's testimony. Counsel is not deemed to be ineffective for failing to raise meritless arguments or futile objections.  *Ericksen*, 288 Mich App at 201.

Defendant further asserts that counsel was ineffective for failing to provide citation to legal authority in his motions to quash and to suppress in the lower court. A review of the record indicates that counsel did cite to court rules and statutory law in the motion to dismiss and referenced the Fourteenth Amendment in the brief filed in support of the motion to quash.  As such, defendant's contention is not accurate. Even if counsel's performance could be construed as deficient based on the failure to cite to additional legal authority in these documents, there is no evidence to suggest that defendant did not receive a full and complete hearing on the issues raised by defense counsel in the trial court.  Based on the lack of factual support for many of defendant's contentions in these motions, it is unlikely that the citation to additional legal authority would have resulted in a different outcome.

Defendant alleges that counsel was ineffective for the delay caused while awaiting a psychiatric evaluation by the Forensic Center and for permitting trial to proceed without having procured such an evaluation.  As noted previously, however, defendant has waived this issue by his indication to the trial court that he did not want the evaluation to proceed, despite the fact that it had been arranged. "[A] party cannot request a certain action of the trial court and then argue on appeal that the action was error."  *McCray*, 210 Mich App at 14.  "To hold otherwise would allow defendant to harbor error as an appellate parachute."  *Fetterley*, 229 Mich App at 520.  Defendant also faults his counsel for a failure to investigate or interview the psychologist at the Oakland County Jail or to produce records from the jail pertaining to his mental health history and prescription for psychotropic medication at the time of the crime.  Defendant provides no documentary or record evidence to support these contentions and offers no explanation for his refusal to participate in the Forensic Center psychiatric evaluation that was procured. "Defendant may not leave it to this Court to search for a factual basis to sustain or reject his position."  *People v Traylor*, 245 Mich App 460, 464; 628 NW2d 120 (2001) (citation omitted).  There is no evidence to suggest, despite defendant's post-hoc assertions, that he was not competent to stand trial or that he was legally insane at the time of the event.  Once again, counsel is not deemed to be ineffective for

failing to raise meritless arguments or futile objections. *Ericksen*, 288 Mich App at 201.

Defendant also contends that counsel was ineffective for failing to produce certain witnesses at the preliminary examination, for failing to obtain character and expert witnesses to provide testimony at trial regarding defendant's mental health history, and for failing to subpoena the supervisor of the Kroger store to testify at trial regarding the poor quality of the surveillance video. We disagree.

"An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). "A defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy." *Id*. In general, the failure to call a witness can constitute ineffective assistance of counsel only when it "deprives the defendant of a substantial defense." *Id*. A substantial defense is defined as "one that might have made a difference in the outcome at trial." *People v Kelly*, 186 Mich App 524, 526–527; 465 NW2d 569 (1990).

There is no merit to defendant's claim of ineffective assistance of counsel related to counsel's failure to call all of the prosecution's endorsed witnesses at the preliminary examination. First, defendant confuses the purpose of the preliminary examination and the burden of proof necessary for a bindover decision with the standard of proof required at trial. Second, defendant fails to explain how the prosecution's witnesses would have been of any assistance to him at the preliminary examination stage. Defendant provides no citation to the record or any affidavits or documents regarding the possible testimony of these witnesses to establish "the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). In addition, it is well recognized that "decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which [this Court] will not second-guess with the benefit of hindsight." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) (internal quotation marks and citations omitted).

Similarly, defendant has provided no information regarding his mental health history and merely speculates, without support or detail, that an expert witness could have offered useful or relevant testimony. As such, defendant has failed to demonstrate "that the retention of an independent expert would have altered the outcome of the lower court proceedings." *Payne*, 285 Mich App at 190.

Next, defendant asserts that counsel was ineffective for failing to secure the testimony of the Kroger supervisor for trial regarding the poor quality of the store's surveillance videotape. However, he offers no explanation of how additional testimony by a Kroger supervisor would have assisted his defense, and any such explanation is not apparent from the record. Accordingly, this claim necessarily fails.

Defendant further argues that counsel was ineffective for failing to seek a continuance of his sentencing in order to secure a psychiatric report. In the PSIR, defendant acknowledged a history of substance abuse but denied a psychiatric history. In conjunction with defendant's interview for the preparation of the PSIR, it was indicated that "defendant admitted to a history of drug abuse, with the more recent drug of choice being Vicodin. He states that he was taking at least four pills a day prior to his arrest." There is no indication in the PSIR of defendant's use of any prescription psychotropic medications other than those prescribed for someone else. At sentencing, defendant acknowledged the opportunity to review the PSIR and his only concerns involved the inclusion of two crimes, which he asserted did not result in convictions. Consequently, there is nothing to suggest that counsel was ineffective for failing to delay sentencing to procure a psychiatric report, when there is no record substantiating that defendant had a documented history of mental illness. Defense counsel is not deemed to be ineffective for failing to raise meritless arguments or futile objections. *Ericksen*, 288 Mich App at 201. In addition, at sentencing, defendant acknowledged the professional performance of his trial counsel when he stated[,] "Yes, he did a pretty decent job," in response to the trial court's comment, "He did a really good job in trial."

Lastly, defendant contends that the cumulative effect of the deficiencies in performance demonstrated by his trial counsel necessitate reversal of his conviction. For cumulative error to be found, "the effect of the errors must be seriously prejudicial in order to warrant a finding that defendant was denied a fair trial." *People v Ackerman*, 257 Mich App 434, 454; 669 NW2d 818 (2003). Only actual errors may be aggregated when considering the cumulative effect of errors. *People v Bahoda*, 448 Mich 261, 292 n 64; 531 NW2d 659 (1995). Because defendant has failed to demonstrate that his trial counsel was ineffective, there is no error to accumulate. When no errors are found, "a cumulative effect of errors is incapable of being found." *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999).

(Mich. Ct. App. Op., ECF No. 16-12, PageID.377-379.) Although the court of appeals cited only

Michigan cases, it squarely applied the *Strickland* standard to Petitioner's claims. Indeed, *People*

*v. Horn*, 755 NW2d 212, 219 n.2 (Mich. App. 2008), from which the court of appeals took its

standard of review, recites the standard of *People v. Carbin*, 623 N.W.2d 884, 889 (Mich. 2001),

which in turn directly relies upon *Strickland*.

### A.    Defective Information & Unsigned Warrant

Petitioner first complains that his trial attorney rendered ineffective assistance when

he failed to challenge the information as defective, on the ground that neither the information nor

the warrant were signed by the district court until the day after Petitioner was arrested.   As previously discussed, Petitioner's underlying claim involves solely a question of state law. Counsel may be found to be ineffective for failing to raise a meritorious state-law claim.  *See Goff v. Bagley*, 601 F.3d 445, 464 (6th Cir. 2010).  The underlying issue need not be constitutional.  *Id. See also Moore v. Mitchell*, 708 F.3d 760, 795 (6th Cir. 2013).

The Michigan Court of Appeals rejected Petitioner's ineffective-assistance-of-counsel claim, holding that the record evidence failed to demonstrate that Petitioner was factually correct about the alleged defects.  The court of appeals' holding on this ground is a determination of the facts that is presumed to be correct, absent a showing by clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); *Sumner*, 449 U.S. at 546; *Lancaster*, 324 F.3d at 429. Petitioner wholly fails to overcome the presumption.

Moreover, in addressing the Petitioner's claims concerning the inadequacies of the information and warrant directly, the court of appeals set forth its findings in greater detail, expressly identifying why the criminal complaint and information were timely signed within the meaning of Mich. Ct. R. 6.101 and Mich. Ct. R. 6.112.  (Mich. Ct. App. Op., ECF No. 16-12, PageID.373.)  The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).  As a result, any further challenge to the information would have been futile.  Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel.  *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).

**B.     Identification of Binns as Witness Before Preliminary Exam**

Petitioner contends that his trial attorney was ineffective for failing to object to Binns' testimony at the preliminary examination on the ground that the prosecutor had not included Binns on a witness list.  In addressing the issue, the court of appeals summarily held that witness Binns was in fact identified on the prosecutor's witness list.  As a result, Petitioner's claim was unsupported by the record evidence.  (Mich. Ct. App. Op., ECF No. 16-12, PageID.377.)  That holding was further supported by the trial court's more detailed discussion respecting Petitioner's independent claim (Ground III) that the prosecutor had failed to meet his obligation under Mich. Comp. Laws § 767.40a(1) and (3) to attach witness lists to the information.  (Mich. Ct. App. Op., ECF No. 16-12, PageID.370.)

As discussed previously, the state court's factual findings are presumptively correct, 28 U.S.C. § 2254(e)(1), and Petitioner makes no showing to overcome that presumption. Further, the court's conclusion that witness Binns was properly identified under Michigan law is conclusive on habeas review. *Bradshaw*, 546 U.S. at 76.  Any challenge on this basis, therefore, would have been futile.  Counsel is not ineffective for declining to raise a meritless motion. *Smith*, 591 F.3d at 523.

**C.     Failure to Cite Case Law in Motions to Quash & Dismiss**

Petitioner's third claim of ineffective assistance of counsel is that counsel failed to cite case law and failed to use the complete preliminary examination testimony in moving to quash the information and complaint and moving to dismiss the case.  The court of appeals expressly found that trial counsel had cited the Fourteenth Amendment, the court rules, and statutory law in the motion to dismiss and motion to quash.  It therefore held that Petitioner's claim of attorney error was factually unsupported.  Moreover, the court held that citation to additional authority

41

would have made no difference.  Instead, the underlying motions were properly denied because the legal arguments were factually unsupported.

Again, Petitioner completely fails to demonstrate error in the factual determinations of the court of appeals, much less to overcome the presumption of correctness of those findings. 28 U.S.C. § 2254(e)(1).  Further, the court of appeals concluded that the motions to quash and dismiss were properly denied under Michigan law.  As a result, further citations in the motions would have made no difference in the result.  Petitioner therefore cannot demonstrate the requisite prejudice to show ineffective assistance of counsel.  *Strickland*, 466 U.S. at 689.

### D.    Failure to Ensure Psychiatric Examination

Petitioner complains that his trial attorney rendered ineffective assistance of counsel when he proceeded to trial without having Petitioner evaluated to determine Petitioner's competency to stand trial and his state of mind at the time of the offense.  In rejecting Ground VIII of the petition, this Court held that the record contained no basis for suspecting that Petitioner was not competent to stand trial.  As a result, Petitioner cannot show that his attorney was ineffective in failing to ensure that he received a competency examination before trial.  *Strickland*, 466 U.S. at 689.

Further, to the extent that Petitioner argues that counsel should have ensured that Petitioner was sane at the time of his offense, he falls short of overcoming the *Strickland* presumption that counsel's decision was strategic.  Petitioner maintained that he was not the robber, even at the time of sentencing. (*See* Sentencing Hr'g Tr., ECF No. 16-11, PageID.351-352.)  Counsel pursued the case on a strategy of challenging the reliability of the witnesses' identifications of Petitioner as the perpetrator – not on a theory that Petitioner was not sane at the time of his offense.  That strategy was patently reasonable and within counsel's professional

42

judgment.  *Strickland*, 466 U.S. at 689-90.  Disagreement by a defendant with tactics or strategy will not support a claim of ineffective assistance.  *Strickland*, 466 U.S. at 689.  In addition, neither in the state courts nor in this Court has Petitioner identified a basis for suspecting that he was legally insane at the time of the offense.  As a consequence, Petitioner cannot show that he was prejudiced by counsel's actions.  *Id.*

### E.    Failure to Interview Psychiatrist & Psychologist

Petitioner next argues that his attorney was ineffective for failing to interview the psychiatrist and psychologist at the Oakland County Jail and the Detroit East Community Mental Health Center.  Petitioner contends that those interviews would have revealed that Petitioner was on psychotropic medications.

Petitioner's argument is frivolous.  As previously discussed with respect to Ground VIII of the petition, "'even if [the defendant is] mentally ill, it does not follow that because a person is mentally ill he is not competent to stand trial.'"  *Dubrule*, 822 F.3d at 875-76.  Petitioner does not even attempt to argue that talking with the psychiatrist or psychologist would have revealed the Petitioner was not competent to stand trial.  Interviews with the psychiatrist and psychologist at the jail, therefore, would not have been relevant to any strategic course of action.  Petitioner utterly fails to demonstrate what other relevant information counsel could have gleaned from those interviews.  "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'"  *Burt v. Titlow*, 571 U.S. 12, 23 (2013) (quoting *Strickland*, 466 U.S. at 689).

### F.    Failure to Interview Store Manager

Petitioner contends that his trial attorney rendered ineffective assistance of counsel when he failed to interview and subpoena for trial the Kroger store manager.  Petitioner contends

that the manager could have testified about the installation of poor quality surveillance cameras, which did not and could not support the identifications by the various witnesses at trial.

As the Michigan Court of Appeals held, the decision about which witnesses to call is one of trial strategy. *See Gonzalez v. United States*, 553 U.S. 242, 249 (2008) (recognizing that trial management decisions, including deciding which witnesses to call, are decisions for trial counsel). Counsel was well aware of the limitations of the Kroger surveillance cameras, and Detective Clevenger unequivocally testified that the video footage inside the store provided no useful information to support the identifications. (T. Tr. I, ECF No. 16-9, PageID.299.) Petitioner does not even attempt to make a showing that an interview with the store manager would have provided different or relevant additional information. He therefore fails to overcome the strong presumption that counsel provide professionally competent assistance. *Strickland*, 466 U.S. at 691. For the same reasons, he fails to show that counsel's decision to not call the manager as a witness had an effect on the judgment. *Id.* at 691.

### G.    Ineffective Assistance of Appellate Counsel

In his final claim of ineffective assistance of counsel, Petitioner contends that his appellate attorney was ineffective in failing to raise all grounds other than Grounds I and IX.

An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court recently

has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Petitioner fails to make the required showing.  First, although counsel raised only Ground I (sufficiency of the evidence) and Ground IX (sentence violating the Eighth Amendment), the remaining claims were presented by Petitioner in his supplemental brief on appeal, and those claims were fully considered and decided by the court of appeals.  Petitioner therefore cannot demonstrate that he was prejudiced by counsel's failure to raise the claims in the opening appellate brief.  Second, the two claims raised by counsel were clearly the strongest of the claims presented in the state courts and this Court.  As thoroughly discussed earlier in this report and recommendation, Petitioner's additional claims were factually unsupported and legally meritless. Where a claim lacks merit, appellate counsel is not ineffective in declining to raise the issue on direct appeal.  *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."); *Burton v. Renico*, 391 F.3d 764, 781-82 (6th Cir. 2004) (where claim of prosecutorial misconduct lacks merit, counsel is not ineffective in declining to raise issue on appeal).  For both reasons, Petitioner fails to demonstrate that his appellate attorney rendered ineffective assistance of counsel by raising the two claims he did.

In sum, Petitioner completely fails to demonstrate entitlement to habeas relief on his claims of ineffective assistance of counsel.  He neither overcomes the deferential standard of *Strickland* nor the doubly deferential standard applied to the review of such claims on habeas review.  *See Harrington*, 562 U.S. at 105 (citing *Knowles*, 556 U.S. at 123).

## Certificate of Appealability

Unless a certificate of appealability is issued, an appeal of the denial of a habeas corpus petition may not be taken.  28 U.S.C. § 2253(c)(1).  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

46

## **Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  *See Slack v. McDaniel*, 529 U.S. 473 (2000).


Dated:  June 29, 2018                                    /s/ Ray Kent
                                                          United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).